UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HERMAN GOVAN,<br><br>            Plaintiff,<br><br>   v.<br><br>HOLLY C. OWENS and SIXTH JUDICIAL DISTRICT COURT for Bannock County, State of Idaho,<br><br>            Defendants. | Case No. 4:24-cv-00541-BLW<br><br>**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE** |

When Plaintiff filed the initial complaint in this action, he was an inmate in the Bannock County Jail. Plaintiff has since been released from jail. Plaintiff is proceeding pro se and in forma pauperis in this civil rights action. The Court previously reviewed the initial complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, determined that it failed to state a claim upon which relief could be granted, and allowed Plaintiff an opportunity to amend—which Plaintiff has now done. *See Initial Review Order*, Dkt. 7.

The operative pleading is Plaintiff's Second Amended Complaint ("SAC"), filed on August 27, 2025. Dkt. 13. The Court retains its screening authority pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Having carefully reviewed the record, the Court concludes that the Second Amended Complaint fails to remedy the deficiencies in the initial complaint, and the Court will dismiss this case pursuant to 28 U.S.C. §§ 1915 and 1915A.

1.      **Standards of Law for Screening Complaints**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

2.     **Factual Allegations**

Plaintiff claims that, in May 2024, Plaintiff's then-landlord, Holly C. Owens, presented false evidence, including committing perjury, during an unlawful detainer action against Plaintiff. *SAC*, Dkt. 13, at 4. Plaintiff received notice of the unlawful detainer action, but he was in custody and was unable to attend the hearing. *Id*. at 3–4. Owens also allegedly kept most of Plaintiff's personal property instead of releasing it to him.

Plaintiff alleges that the court in which Plaintiff's unlawful detainer action was heard, the Bannock County Court in the Sixth Judicial District of Idaho, failed to give Plaintiff certain notices required by Idaho law. *Id*. at 7. The court entered a default judgment against Plaintiff, which Plaintiff did not receive because he had been transferred. *Id*. at 9–13. Plaintiff filed a motion to set aside the judgment, which was denied, although Plaintiff again did not receive a copy of the order. *Id*. at 8. Plaintiff contends the court failed to follow Idaho law in its ruling and ignored Owens's "illegal acts, fraud, and perjury" in denying the motion. Plaintiff alleges that the court should have ensured that the notices and orders were forwarded to his new address, of which he had informed the court. *Id*. at 10–11.

Plaintiff tried to appeal the denial of his motion to set aside the judgment. A clerk at the Bannock County Court returned the document to Plaintiff with instructions to request a waiver of fees. Plaintiff did so. Plaintiff claims that a magistrate judge, rather than a district judge, improperly ruled on the fee waiver request. *Id*. at 9.

SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 3

In May 2025, Owens permitted Plaintiff's wife to enter the premises to pick up the items of Plaintiff's personal property that Owens had not already taken. Plaintiff's wife discovered that Owens had left some of the property open to the weather such that they were ruined and "had to be abandoned." *Id*. at 6.

Plaintiff names Owens and the Bannock County Court as defendants. Plaintiff alleges that he was deprived of his rights to due process and equal protection. Although the Second Amended Complaint cites both the Fifth and Fourteenth Amendments to the Constitution, *Id.* at 1, the Fifth Amendment rights to due process and equal protection apply only to federal government action, which is not at issue in this case. Therefore, the Court will analyze Plaintiff's claims under the Fourteenth Amendment.

**3.    Discussion**

   **A.    *Standards of Law***

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

To bring a § 1983 claim against a local governmental entity such as the Bannock County Court, a plaintiff must allege that the execution of an official policy or unofficial

custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). Under *Monell*, the requisite elements of a § 1983 claim against such an entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). An entity also "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority" or when "such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or

damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

As explained in the Initial Review Order, the Due Process Clause prohibits state action that deprives a person of life, liberty, or property without due process of law. *See* Dkt. 7. At 4–5. A person cannot obtain relief on a due process claim unless he demonstrates that he was deprived of one of these protected interests.

If a plaintiff shows he had a protected interest, then the question becomes what process was due. This determination must be made on a case-by-case basis. *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974) ("Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.") (internal quotation marks and alteration omitted). The "essence of due process" is notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).

Due process is a flexible concept and calls for such procedural protections as the particular situation demands. *Id*. Three factors inform whether an inmate has received the process to which he was due: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Not every wrongful act by a government official violates the Constitution. The right to due process "is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

In addition to due process, the Fourteenth Amendment also guarantees equal protection of the law. The purpose of the Equal Protection Clause is "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal citation and quotation marks omitted). Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Even where similarly situated persons are treated differently by the state, "state action is presumed constitutional and 'will not be set aside if any set of facts reasonably may be conceived to justify it.'" *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)). Absent evidence of invidious discrimination, the federal courts should defer to the judgment of prison officials. *See id*.

Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny if they involve a "suspect" or "quasi-suspect" class,

such as race, national origin, or sex, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). However, because inmates are not a protected class under the Equal Protection Clause, their equal protection claims are generally subject to rational basis review. *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998).

In a rational basis analysis, the relevant inquiry is whether the defendants' action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (quotation omitted). A plaintiff can prevail under rational basis review only if (1) the plaintiff is similarly situated with persons who are treated differently by a governmental official, and (2) the official has no rational basis for the disparate treatment. Mere negligence does not violate the Equal Protection Clause. *Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 916 (D. Iowa 2001) ("There can be no 'negligent' violations of an individual's right to equal protection.... There is no evidence from which the court may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the [prison] were a pretext for discrimination.").

### B.     *Claims Against Owens*

The Second Amended Complaint fails to state a plausible § 1983 claim against Defendant Owens, who is a private citizen. Plaintiff's allegations do not support a reasonable inference that Owens was acting under color of state law.

The Court previously explained the requirement of state action, *see Initial Review Order* at 6–7, but the Second Amended Complaint fails to plausibly establish that requirement. The Second Amended Complaint alleges only that Defendant Owens and the Bannock County Court "participated together" to violate Plaintiff's rights and that the court aided Owens in depriving Plaintiff of his property. *SAC* at 7, 11. Such conclusory allegations are not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 679.

Accordingly, Plaintiff's § 1983 claims against Owens must be dismissed for lack of state action.

### C.   *Claims Against Bannock County Court*

Plaintiff's due process and equal protection claims against the Bannock County Court are also implausible. The Second Amended Complaint fails to include any allegations plausibly suggesting that the court conspired with Owens to deprive Plaintiff of due process or equal protection. As previously explained, Plaintiff's bare assertions of a conspiracy are "insufficient to meet the pleading standards of Rule 8." *Initial Review Order* at 7 (citing *Twombly*, 550 U.S. at 556–57).

Moreover, Plaintiff has not plausibly alleged that any of the actions taken by employees of the Bannock County Court were taken pursuant to a policy, custom, or practice of Bannock County as required by *Monell*. Rather, the "obvious alternative explanation" is that court employees exercised their own independent judgment in taking the actions of which Plaintiff complains. *Iqbal*, 556 U.S. at 682 (internal quotation marks omitted).

In addition, the Second Amended Complaint plausibly alleges only that certain unidentified employees of the Bannock County Court might have acted negligently in failing to ensure that Plaintiff received its notices and orders at his new address, or in failing to properly apply Idaho law. This is not enough to state a colorable due process or equal protection claim. *See Daniels*, 474 U.S. at 328; *Youngbear*, 174 F. Supp. 2d at 916.

Finally, Plaintiff's claim that the magistrate judge was not empowered to consider his fee waiver application is contrary to Idaho state law. The jurisdiction of magistrate judges in Idaho is established (1) under the Idaho Constitution, *see* art. 5, § 2, (2) by legislation, *see* Idaho Code §§ 1-2208 through 1-2210; (3) by the Rules of the Idaho Supreme Court, *see* Idaho Court Administrative Rules, which replaced Idaho Rule of Civil Procedure 82; and (4) "by the rules of the respective district courts." *Marks v. Vehlow*, 671 P.2d 473, 477 (Idaho 1983).

As the Idaho Supreme Court has explained, "magistrate judges have general jurisdiction, and the authority for a magistrate judge to hear a case or type of case is purely dependent upon assignment, not jurisdiction." *State v. Jones*, 115 P.3d 743, 746 (2005). Specifically, although "assignment of cases to magistrates must be approved by order of a majority of the district judges in the district," the jurisdiction of magistrate judges "is the same as that of district judges." Idaho Court Admin. R. Rule 5(a). Therefore, a magistrate judge may consider a fee waiver application to the same extent as a district judge in Idaho.

For these reasons, the Second Amended Complaint fails to state a plausible claim against the Bannock County Court, and these claims must be dismissed.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion to File Second Amended Complaint (Dkt. 12) is GRANTED.

2. The Second Amended Complaint fails to state a claim upon which relief may be granted. Therefore, for the reasons stated in this Order and the Initial Review Order (Dkt. 7), this entire case is DISMISSED with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1).

DATED: December 10, 2025

B. Lynn Winmill
U.S. District Court Judge